IN THE UNITED STATES WESTERN DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>PAULA KLUDING,   )<br>)<br>Defendant.   ) | CR-14-123-C |

**MOTION FOR EVIDENTIARY HEARING ON THE ISSUE OF
$2,519,813.33 RESTITUTION**

## FACTS

The Defendant Paula Kluding was convicted after a jury trial on various counts of health care fraud through the operation of Prairie View Hospice.

During the trial of the matter, the Government did not introduce any evidence of a "loss" by Medicare/Medicaid but rather, opted to present evidence to the United States probation office of a two (2) to five (5) million dollar ($2,000,000-$5,000,000) loss under the preponderance of evidence standard, rather than a standard of reasonable doubt.

The presentence report (PSR) has adopted the Government's spin on the "loss" of two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33).

In support of the Government's claim; it has cited that one of its agents personally reviewed six-hundred ninety (690) separate files that contained fraudulent documents and calculated the loss at two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33). In as much as counsel for the Defendant always reads the Government's documents, with an eye to Government over-reaching, counsel discovered the documents were a compilation of patients listed in thirty (30) to thirty-one (31) day increments.

Counsel's review of the documents arrives at a figure of seven-hundred forty seven (747) entries, not six-hundred ninety (690) as the Government asserts.

Regardless, a simple calculation of seven-hundred forty seven (747) entries times thirty and one half (30 ½) days per entry, gives a figure of TWENTY TWO THOUSAND SEVEN HUNDRED EIGHTY THREE (22,783) total entries, which gives rise to twenty two thousand seven-hundred eighty three (22,783) criminal acts performed by the Defendant under discreet supervision or USSG1B1.3 relevant conduct.

Additionally, the Government in their response to the co-defendant Patricia Carter's motion; (filed in this case @ document 58, October 14, 2014) stated at page 7:

2

> " Because of the way Medicare reimburses hospice providers – **on a per diem rate that is not directly connected to the quantity or type of services provided,** nor any particular documentation of such services – **the connection between the conduct of conviction** for Ms. McGolden or Ms. Hagerman and **any loss to the victim, Medicare, is far too attenuated and negligible to attempt a reasonable restitution calculation.**"

Defendant finds the statement by the Government to be a bit confusing. If the government agents have gone through twenty two thousand seven-hundred eighty three (22,783) documents and determined them to be direct criminal acts or USSG 1B1.3 relevant conduct via criminal conduct, how can the conduct of the Government's witnesses McGolden and Hagerman be "too attenuated and negligible" to attempt to calculate a loss?

Additionally, the Government states that the "cap" calculation assessed against Prairie View Hospice by Medicare/Medicaid has nothing to do with the two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33) loss caused by Paula Kluding.

Is the Government asserting there is another two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33) cash loss caused by Paula Kluding? If this were the case,

3

then the PSR would have calculated a five million dollar ($5,000,000) loss for USSG purposes.

The two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33) "loss" the Government reported to the probation office is just another way to collect Medicare/Medicaid "cap" loss.

The Defendant demands the Government provide evidence of every dollar they claim as direct criminal conduct or relevant criminal conduct pursuant to USSG 1B1.3.

## ARGUMENT
## RULES FOR RESTITUTION

<u>US v. Ferdman 2015 WL 619629. (2/15/15)(NM) Published 10th Circuit CASE NO: 13-2196</u> at page 6:

> "After reviewing the PSR and any objections thereto, the district court may require additional documentation or testimony before awarding restitution. Id. § 3664 (d)(4)."

Next, the Ferdman opinion, supra, addressed the PSR:

> "But this does not mean a district court may dispense with the necessity of proof as mandated by the MVRA and simply "rubber stamp" a victim's claim of loss based upon a measure of value unsupported by evidence. **A district court "may resolve restitution uncertainties with a view towards achieving fairness to the victim so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss."** United States v. Gallant, 537 F.3d 1202, 1252 (10th Cir. 2008)." (emphasis added)

4

Finally, the opinion states at pages 7 & 8:

> " Where a district court concludes the record contains insufficient information to permit a timely calculation of a victim's actual loss, the MVRA provides the court with three non-mutually exclusive options: (1) Ask the Government to submit additional evidence, (2) Hold an evidentiary hearing, or (3) Decline to order restitution. 18 USC §§ 3663A (c)(3)(B), 3664 (d)(4), (d)(6). **Issuing an order of restitution unsupported by the evidence is not an option**. See United States v. Fair, 699 F.3d 508, 516 (D.C. Cir. 2012)." (emphasis added)

The Ferdman opinion is in accord with the US v. Sharma discussion of the 5th Circuit @ 703 F.3d 318 (2012) which stated @ P. 323:

> **"Moreover, excessive restitution awards cannot be excused by harmless error; every dollar must be supported by record evidence."**

## THE ISSUE OF CREDIT FOR MEDICAL SERVICES ACTUALLY PROVIDED

The Sharma decision, supra addressed the issue of legitimate medical services and restitution. At page 324 & 325, the 5th Circuit:

> "Actual loss also must not include compensation for that which would have occurred in the absence of the crime. Thus in health-care fraud cases, an insurer's actual loss for restitution purposes must not include any amount that the insurer would have paid had the defendant not committed the fraud. For example, in United States v. Klein, the defendant physician was convicted of billing insurers for personally administering three shots to his patients, when in fact each patient self-administered *325 two of the three shots at home. The district court awarded restitution in the entire amount that the insurers paid the defendant for the two self-administered shots, including the cost of the medication itself as well as the amount the defendant

charged for administering it. But this overstated the insurers' losses: Even though the doctor fraudulently misrepresented how the medication was administered, "the insurance companies would not have had to pay for the medication regardless of the fraud." We therefore vacated the restitution award and remanded for recalculation with a credit for the value of the medication."

"In contrast, no credit was warranted in United States v. Jones when the defendants billed Medicare for providing physical rehabilitation services, but fraudulently misrepresented the qualifications of the personnel who performed the work. The district court awarded restitution to Medicare for the total amount it paid to the defendants, without giving any credit for the value of the physical therapy that was actually provided. We affirmed because, although the patients may have received some therapeutic benefit, Medicare itself – not the patients – was the victim of the fraud and would not have paid for any of the treatment absent those fraudulent misrepresentations. "

As can be seen, the Sharma decision, supra, gives an example of "credit for legitimate services," and establishes the burden for each party.

Prairie View Hospice was paid approximately one hundred forty dollars ($140) per day per person residing in their facility.

The Government states they *"Can prove twenty three thousand one hundred fifty seven (23,157) separate illegal acts by Prairie View Hospice or Paula Kluding."*

The Defendant refutes this statement and demands the Government provide evidence of twenty three thousand one-hundred fifty seven (23,157) individual "criminal acts."

The Government will most assuredly try to use USSG 1B1.3 (relevant conduct) as a back-up plan. However, the Government must satisfy the three (3) requirements of the Ferdman & Sharma case law concerning relevant conduct.

The Defendant is ready and able to show it's legitimate services provided to 747 different entries in the Government's highly tainted "Excel Spreadsheet."

## US v. TRIANA IS NOT APPLICABLE TO THIS CASE

The Government has cited US v. Triana, a 6th Circuit decision that is inapplicable to the facts of this case.

## US V. TRIANA
## 468 F.3d 308 (6th Cir. 2006)

The Government stretches the decision to a breaking point in citing this decision as relevant to Ms. Kluding's case as follows:

1) The defendant in Triana had been previously convicted of Medicare fraud, and

2) The defendant in Triana due to his prior Medicare fraud was ineligible to receive Medicare benefits, and

3) The defendant in Triana due to his prior conviction of medical fraud utilized "straw owners", and

4) The defendant in Triana had substantial participation in the "straw" companies, and ergo, under Medicare regulations the "straw" companies were ineligible to receive Medicare benefits.

Compare Triana to the case against Paula Kluding:

a) Paula Kluding has never been convicted of Medicare fraud prior to this current case, and

b) Prairie View Hospice or Paula Kluding was not ineligible to receive Medicare hospice benefits.

c) Paula Kluding established a bona fide corporation; i.e. Prairie View Hospice that kept corporate minutes, filed yearly tax returns and kept it's franchise tax returns up to date, and

d) Prairie View Hospice was never ruled ineligible for Medicare funds by Medicare.

The Government's statement that Prairie View Hospice or Paula Kluding was ineligible to receive Medicare funds is patently false and misleading. Therefore, the Government has no case law to support its position.

## IN CONCLUSION

The Defendant seeks an evidentiary hearing on the issue of two million five-hundred nineteen thousand, eight-hundred thirteen dollars and thirty-three cents ($2,519,813.33) in losses by Medicare/ Medicaid and how the

Government can establish every dollar of loss was the result of a criminal act and is not subject to credit for legitimate services rendered to a patient, for which Medicare/ Medicaid paid one hundred forty dollars ($140) and any such relief this Court deems equitable.

Respectfully Submitted,

s/Jack Dempsey Pointer, OBA #7203
1621 N. Classen Boulevard
Oklahoma City, OK 73106
(405) 232-5959 – Telephone
(405) 239-2595 – Facsimile

s/ Jacquelyn L. Ford, OBA #21179
1621 N. Classen Boulevard
Oklahoma City, OK 73106
(405) 604-3200 – Telephone
(405) 239-2595 – Facsimile

*Certificate of Service*

__✓__ I hereby certify that on (date) __June 16, 2015__, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: (insert names)
Amanda Maxwell-Green

_____ I hereby certify that on (date) _____, I served the attached document by (service method) _____ on the following, who are not registered participants of the ECF System: (insert names and addresses)

Jack Dempsey Pointer
s/ Attorney Name
